PATRICIA A. GREGORY
20130 MONTE VISTA STREET
APPLE VALLEY, CA 92308
madisonfalls23@gmail.com
760-419-4255



FILED

APR 29 2013

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

Patricia A. Gregory,            )
                                )      13CV1016 WQH JMA
Plaintiff,                      )
                                )      Case No.: _____
                                )
v.                              )
                                )      COMPLAINT
                                )
County of San Diego,            )
William D. Gore, Sheriff,       )
Counselor Jennifer Montiel   and )
Does I through XX, Inclusive    )
                                )
Defendants.                     )
                                )
_____ )

## I. JURISDICTION & VENUE

1.      This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation,

under color of state law, of rights secured by the First, Sixth and Fourteenth amendments of the

1

Constitution of the United States. This Court has jurisdiction pursuant to (a) 28 U.S.C. Section 1331, because the case arises under the Constitution and laws of the United States; (b) 28 U.S.C. Section 1343, because this action seeks redress and damages through 42 U.S.C. Section 1983 for violations of the due process and equal protection provisions of the United States Constitution, including the rights protected in the First, Sixth and Fourteenth Amendments.

2.      The Southern District of California is an appropriate venue under 28 U.S.C. section 1391 (b) because it is where the events giving rise to this claim occurred.

## II. PLAINTIFF

3.      **Plaintiff Patricia A. Gregory**, was incarcerated in Las Colinas Women's Jail from February 24, 2012 through August 10, 2012 where the violations occurred.

> As a "…former prisoner, no longer 'in custody', (she) may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him (her) to satisfy. " *Spencer v. Kemna*, 523 US 1 Supreme Court 1998, (Souter, J., concurring in judgment).

## III. DEFENDANTS

4.      **Defendant William D. Gore** is subject to 42 USC § 1983 liability because he oversees and operates seven detention facilities in San Diego County, including Las Colinas Detention Facility where the violations took place. California law places upon the sheriff responsibility for operating the county jails and as a result he is required by statute to properly manage all the jails under his charge. *Brandt v. Board of Supervisors* 84 Cal.App.3d 596 (1978).

5.      **Defendant County of San Diego** is also subject to 42 USC § 1983 liability because of it's policies of discriminating against female inmates, closing only the Las Colinas law library,

1    failing to provide a constitutionally valid alternative,  and failing to provide an adequate jail

2    grievance system . As cited in *Brewster vs. Shasta County* 275 F.3d 803 (2001) :

3         "A county is subject to liability under 42 U.S.C. § 1983 if its policies, established by the
4         county's lawmakers or "by those whose edicts or acts ... may fairly be said to represent
         official policy" caused the constitutional violation at issue. *Monell v. New York City
5         Dep't of Soc. Servs.,*436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) .

6    6.     **Counselor Jennifer Montiel** is liable under 42 USC § 1983 as her acts as a

7    counselor in the employ  of the County of San Diego and under the management of

8    Sheriff Gore repeatedly violated  Plaintiff's  constitutional rights. *West v. Atkins*, 487

9    U.S. 42, 48 (1988).

10

11   7.     Each defendant is sued individually and in their official capacity. At all times mentioned

12   in this complaint each defendant acted under the color of state law as described  below.

13

14                              **IV. INTRODUCTION**

15   8.     Defendants  County of San Diego, Sheriff  William Gore and Counselor Montiel

16   violated Plaintiff's First, Sixth and Fourteenth amendment rights causing actual injury to

17   Plaintiff.  The constitutionally defective policies and practices of Defendants as described

18   within,  stymied Plaintiff's access to the courts, resulting in Plaintiff's inability  to file a timely

19   appeal to an administrative ruling of the State Bar of California while she was incarcerated.

20   And  as the State Bar's ruling formed a basis for  Plaintiff's  conviction, confinement and

21   restitution orders,   Plaintiff 's inability  to access the courts to address trial court errors,

22   resulted in pain, suffering, physical injury and emotional distress. The Defendants  are also

23   individually subject to punitive damages  because they  each acted in a callous and reckless

24

25   manner.

26

**COMPLAINT**

# V. FACTS

9.      On March 13, 2011 Plaintiff, a family law attorney, was placed on inactive status after a three day trial charging her with misappropriation of $112,000 in trust funds in regards to two former clients, Luwain Ng and Denise Doll.  Plaintiff filed a motion for review based upon perjured testimony of the clients, prosecutorial misconduct and trial court error.

10.     Prior to the State Bar Review Court's ruling, on September 29, 2011, Plaintiff was charged with 11 felony charges adding up to possibly 20 years in State Prison.  Based upon information from her attorney, Plaintiff was advised that the criminal charges were filed by the alleged victims because Plaintiff filed an objection with the Client Security Fund Commission of the State Bar, as she believed that neither party was entitled to any reimbursement as ordered by the trial judge, since all of the funds in questions had been used to pay Plaintiff's well earned fees.  It was Plaintiff's belief that the oral and written agreements entered into with the clients were valid.  The information Plaintiff received concerning her objection was validated when the prosecuting District Attorney demanded that one of the terms of the plea bargain would have Plaintiff dismiss all of her objections with the Client Security Fund Commission reimbursing the former clients.

11.     Plaintiff's reply brief (EXHIBIT 1) succinctly describes the lack of credibility of the clients, who in Plaintiff's opinion were trying to obtain funds to which they were not entitled pursuant to both oral and written agreements.  Plaintiff provided documented evidence of credibility issues with the former clients:  Doll was a former prostitute, a fact validated by Doll's ex husband under penalty of perjury.  Doll was also listed on the Department of Justice Child Abuse index due to her numerous unfounded allegations of sexual abuse of their son by her ex-husband, James Bush, who also happens to be the attorney of record for Ng.  Mr. Bush

4

was repeatedly brought to child support hearings by Doll for a failure to pay child support; she continually requested that his bar license be revoked. Doll forced Bush into bankruptcy by seizing his automobile as a judgment creditor. Bush is an admitted recovered sex addict who owed child support arrears and was involved in continuous post judgment family law issues with Doll. Bush defaulted in his payments to Doll's father after negotiating a $100,000 settlement. Plaintiff represented Doll in those hearings.

12.     With her prior family law attorney Doll was sanctioned by the trial court for false allegations of child abuse. In addition Doll had over $100,000 in unpaid and outstanding attorney fees balances from at least five family law attorneys. Of extreme relevance was Doll's perjury regarding a signed fee agreement between Plaintiff and Doll. Doll denied signing the fee agreement during her deposition. As a result the State Bar and Plaintiff jointly retained a handwriting expert who opined that the fee agreement was in fact signed by Doll. The fee agreement allowed Plaintiff to remove funds from trust. Doll's credibility was also at issue as she falsely testified that she allegedly earned over $38,000 over a two year period, working for Plaintiff. This was Doll's way of avoiding liability for the $38,000 owed to Plaintiff in attorney fees. In the state bar case Doll testified under penalty of perjury that she had been receiving SSI since the birth of her son who was approximately 12 years old. Thus Doll either committed Social Security fraud or lied about earning the $38,000. This was an important fact ignored by the trial court and directly related to the amount of subsequent restitution and sentencing orders. Doll also testified under penalty of perjury that she, personally, did not pay any money for attorney fees to Plaintiff. Plaintiff successfully represented Doll in eight different cases.

13.     Ng's husband misappropriated funds from his father's trust account during their marriage and Ng unlawfully demanded half of the illegal funds remaining at the end of the marriage.  Plaintiff advised her that she was not entitled to the illegal funds.  Subsequently Ng made false and highly inflammatory statements to the press during the criminal proceedings and made false statements at trial.  Plaintiff believed that both former clients misrepresented facts at trial for improper financial gain.

14.     After the trial court's decision, Plaintiff contacted the Client Security Fund Commission and objected to any payments to the former clients because they had already received over $100,000 in competent legal work that both Ng and Doll refused to pay for.   Plaintiff was informed that the clients then aggressively pursued criminal charges against her for her failure to agree to have the State Bar fund Ng and Doll's litigation.

15.     On January 23, 2012 Plaintiff signed a plea bargain/no contest to one felony and two misdemeanor counts because she been frightened and intimidated with the eleven felony charges made against her and the corresponding prison time.  Plaintiff also feared that the perjured statements of the former clients made at the state bar trial would be believed at a criminal trial.  Plaintiff 's attorney constantly reminded her that she was facing 20 years in prison if the case went to trial.  Plaintiff had used the last of her savings on her criminal attorney and could not afford another.   Faced with no money, and the realization that the former clients were very good at misrepresenting facts, Plaintiff entered into a plea bargain. She did admit and accept responsibility for the fact that she did not put the oral agreements of the two former clients in writing. As that was her responsibility, she accepted the consequences, although she had no belief that she would actually be incarcerated.

COMPLAINT

16.     On February 7, 2012,  the Review Department of  the State Bar of California ordered that  Plaintiff  would continue to be enrolled as  an inactive member of the State Bar.  Yet during the review hearing, one of the review judges asked trial counsel for the State Bar if he had reviewed  Plaintiff's fee invoices and counsel replied that he only took a cursory look and could not verify the amount.  The trial judge stated in his ruling that there was in fact a substantial amount of competent legal work that had been performed  by Plaintiff.  Thus neither the trial court nor review court actually determined whether or not the legal work performed by Plaintiff was equal to the invoices presented  by Plaintiff.

17.     Trial counsel for the State Bar, Brandon Tady, made several  errors during trial.  He stated that Plaintiff's affidavits from her former clients, that strongly supported her, were not signed under penalty of perjury. That was a false statement.  Four out of the ten affidavits were signed under penalty of perjury and the remaining affidavits all had either email addresses or telephone numbers  so that state bar counsel could easily have contacted them if he wanted to address the truthfulness of the affidavits.   These declarations were very important to Plaintiff's case but ignored by the trial court based upon trial counsel's false representations.  And while it was agreed that the statements were admissible, the trial  court did not include them as exhibits. The review department had to correct that error. Individual statements included:

- " I believe if Ms. Gregory is disbarred there will be one less angel to help all the abused people that are left stranded with no help. "

- "While I understand that attorneys are in a business to make a profit, Ms. Gregory always seemed to be more concerned for the welfare of her clients that the fees she would extract.  In fact she worked with me to establish a fair price for her services."

- "Her fees were great as well.  As I didn't have a lot of money but needed a lot of help.  As a matter of fact of the three previous attorneys I had met with her fees were way more affordable."

7

- "I feel fortunate to have had her represent me, and I would characterize her as scrupulous and fair in her handling of my case."

- "She has in fact undercharged me for her services rendered, I had visited her many times, and spoke on the phone, as well as emailed, and never saw these instances reach my invoices."

- ""Ms. Gregory's fees associated to my case were fair and reasonable."

- "She was upfront with charges and I was provided with billing and statements which reflected her charges for services rendered.  Patricia represents integrity and fairness while practicing professional law."

- "Ms. Gregory did not charge me for several visits and for many hours of her work. I am writing this letter with a grateful heart for my attorney Ms. Patricia Gregory.  I consider it a privilege and a blessing to have her as my attorney to help me finalize my difficult, nasty divorce.

- "It is my observation when I'm in court with her I can see how well respected she is, not only by her colleagues but it has always been very clear how well she is respected by the Judge. She abides and respects the law when most attorneys do not."

18.     Trial counsel also warned Doll prior to her trial testimony about the findings of James Hicks, the jointly retained handwriting expert.  As a result of Mr. Tady's actions,  Doll changed her testimony at trial from her deposition testimony.  Trial Counsel knew of Doll's propensity to lie under oath as he himself stopped the pre-trial deposition to admonish Doll and advise her to tell the truth.  Trial counsel then stood by and watched  Doll perjure herself at trial regarding a meeting with him  prior to her testimony. Trial counsel himself admitted that he had spoken with her, yet did nothing as Doll lied and testified under penalty of perjury  that she did not remember meeting with trial  counsel regarding the handwriting expert the day prior to her perjured testimony.

19.     While it is not disputed that Plaintiff removed the funds from trust without actual written consent from Ng,  Plaintiff  naively believed and relied  instead on their  oral agreements as well as the  amount of actual work performed  such that those agreements should have had an effect on the amount of restitution ordered and subsequently the length of sentencing and in fact incarceration itself.  In regards to Doll, there was a valid, written  fee agreement that allowed

8

COMPLAINT

Plaintiff to remove funds from trust and allowed Plaintiff to pay all outstanding fees from the trust prior to releasing any funds to Doll.  Doll waived the invoicing requirement to mislead Plaintiff into continuing to represent Doll who had promised payment from trust funds, which leads to the main reason why the credibility of Doll is so important to this case.

20.     On February 24, 2012 Plaintiff was sentenced to one year in county jail based in part on the large amount of fees at issue and was immediately taken into custody from the courtroom. Plaintiff had no legal files in her possession.  Several days after Plaintiff's incarceration she began to request the use of the Las Colinas law library. The law library was a small room in the main administration building.  It contained both code books and computer access to a number of legal data bases.  Plaintiff was devastated with the sentencing ruling, given in the courtroom filled with media.  Plaintiff wanted to use the law library to research issues from the state bar trial that formed the basis for her criminal conviction and subsequent restitution order.  Plaintiff wanted to investigate if she was entitled to relief from her criminal conviction and length of sentence.  She also had to research the upcoming deadline for her petition for a writ of review to the Supreme Court.  The computer contained in the room designated as the law library would enable her to research issues for her petition, and assist her in the decision if there were grounds for an appeal and/or sentence modification.  In order to access the law library Plaintiff was obligated to fill out an *Inmate Request* form and place it in the jail mail slot.  Plaintiff made about four visits to the law library, over a ten day period, each visit lasting approximately 2 hours.  She had begun to make progress on the myriad of issues facing her. Then, without notice or reason, her requests for library time went unanswered.

9

COMPLAINT

21.     Frustrated with having her requests ignored, on March 12, 2012 Plaintiff submitted an *Inmate Request* form through normal jail procedure and explained that her three prior requests for library time were disregarded. She had been unable to access the library for over a week and she stated it was her fourth request to work on her appeal. Counselor Montiel responded on March 13, 2012 stating that she had "…received only one request and that was yesterday to which I responded by signing you up for law library today." (EXHIBIT 2) However no visit ever took place as Plaintiff was subsequently notified by a guard that the law library was closed.

22.     On March 14, 2012 Plaintiff submitted another *Inmate Request* form stating that she had been informed that the law library was closed. Plaintiff requested to speak with a sergeant or administrator because she believed her rights were being violated. A written response stated, "Would you like to schedule a session with the counselors for library time ? If so please write to them." (EXHIBIT 3) At that point in time the library had already closed, thus there was no ability to schedule library time and absolutely no response was given to Plaintiff's specific request to speak with a sergeant or an administrator regarding her rights.

23.     For the next two weeks there was absolutely no access to the law library or legal research materials. On or about April 1, 2012 Counselor Montiel forwarded a notice that the Law Library had been replaced by a legal research service. (EXHIBIT 4) Pursuant to the notice, the service replaced visits to the Law Library as of April 1, 2012. The legal research service limited inmate requests to only ONE per calendar month and only FIVE questions could be asked each month. Responses from the service were limited to 50 pages and requests had to be related to criminal law or conditions of confinement. The service provided no judicial council forms, word processing access or even a basic guide to criminal law. Rather it requested

that inmates provide specific cites or cases, along with general questions. This service was woefully deficient as Plaintiff needed to access a law guide such as Matthew Bender, Rutters, annotated codes or access to Federal, State and state bar case law, as she did not yet know what specific cases would apply. This type of legal research service that was belatedly offered by Defendants has been found to be constitutionally inadequate. In *Griffin v. Coughlin*, 743 Supp. 1006 (1990) the court analyzed an exact- cite system (paging) by stating:

> "…inmates are not able to browse through materials in order to compare legal theories and formulate ideas. This is a constitutionally impermissible situation."

24.    On April 2, 2012 Plaintiff requested a ***Legal Research Request*** form from Counselor Montiel. The counselor sent a form request on 4/5/2012, (EXHIBIT 5) which Plaintiff completed and placed in the jail mail slot as instructed.

25.    On May 4, 2012, Plaintiff filed an ***Inmate Grievance Form*** stating that although she had completed the form for the legal research company and submitted it through the normal course of transmission of such documents, no response was ever received. On May 7, 2012 Counselor Montiel replied and stated, " I never received your completed form. Please complete the attached and return." (EXHIBIT 6) For the second time in a month, Plaintiff submitted a request for library access and/or legal information through the inmate request system and was told that the requests were never received. Two months had passed from the time of Plaintiff's last scheduled library visit to the initial response from the legal research service.

26.    During this same time period, as Plaintiff was unable to receive a response from jail administrators, Plaintiff contacted the Supreme Court of California, explaining that she was incarcerated and unable to comply with procedures, fearful that she would miss the deadline for submitting a petition for writ of review. On 4/18/2012 she sent a handwritten letter to the

Supreme Court outlining her reasons for an appeal and explained her lack of tools.   The Clerk of the Supreme Court responded on April 24, 2012 stating, "To consider your petition, we require the petition to be in proper form." and proceeded to outline the technical requirements, providing May 2, 2012 as the deadline for filing. (EXHIBIT 7)

27.     On April 30, 2012 Plaintiff responded (EXHIBIT 8) explaining for the second time that she did not have access to research materials and did not have an ability to complete the forms in triplicate as required by the court. With the only materials available, Plaintiff prepared an Application for Default as suggested by the Court Clerk, as she had no ability to comply with the requisite petition paperwork. The Application was handwritten in pencil, but signed under penalty of perjury as required.   Plaintiff did not have the ability to prepare three authorizations as requested, and explained why.

28.     On May 4, 2012 the Clerk once again indicated that the petition had to be in proper form and filed by June 18, 2012 otherwise an application for default had to be filed. The Clerk also stated that an original only of application for default could be filed.  (EXHIBIT 9)  However that required document had been handwritten and previously sent to the Supreme Court by Plaintiff on 4/30/12 and was signed under penalty of perjury.   There is a 'Received' stamp on the returned document of 4/30/2012 proving that the Supreme Court did in fact receive the Application for Default but for reasons unknown would not accept it.

29.     On June 4, 2012 the clerk again wrote that he had received all of the requests for relief that were handwritten, but was returning them because there was no indication of the case number and none of the necessary documents. (EXHIBIT 10)  He stated the filing deadline was June 18, 2012, but certain documents had to be filed and served on numerous entities. Once again the clerk stated that if the requested documents were not provided by 6/18/2012,

Plaintiff was obligated to submit "an original copy only of an Application for Relief from default." Plaintiff had already complied with that requirement on 4/18/2012 with a handwritten application. However as the clerk stated, it was returned unfiled with no explanation as to why the *handwritten* 'Application for Default' was rejected.

30.     On June 15th Plaintiff responded, but a copy of that handwritten letter was not returned by the clerk. On June 28, 2012 (EXHIBIT 11 ) the clerk acknowledged Plaintiff's letter of June 15, 2012, however the deadline for submitting a petition had past. He further explained that the documents returned to the Plaintiff were due to her failure to provide clarification and original verification. It was impossible for Plaintiff to clarify as she had no access to the tools necessary to comply. The verification form would have accompanied the petition, but Plaintiff was unable to prepare a petition without access to adequate research materials. There was no access to a copy machine to make three copies as required. The lack of a law library, lack of research materials  and lack of the tools needed to draft  and make copies of a petition caused Plaintiff to miss the deadline for filing a writ of petition to the Supreme Court regarding the underlying ruling of her criminal conviction and restitution order.

31.     On July 12, 2012 the Supreme Court notified Plaintiff that "…the court does not extend the time for filing a petition for writ of review." (EXHIBIT 12)  This information was in exact opposite to the previous information from the court clerk  stating that one copy of an 'Application for Default' signed under penalty of perjury was acceptable.  And Plaintiff did in fact submit the requested application as noted above.

32.     Meanwhile, on June 24, 2012 Plaintiff submitted an ***Inmate Request*** form this time with a specific request for access to research materials, judicial forms, word processor and copying capability to properly prepare an application for default.  Plaintiff  believed that if she

13

COMPLAINT

submitted a request for default in proper form, it would be accepted by the Court, because the handwritten default was rejected.   On June 26, 2012, Plaintiff received a response that stated "We do not provide these materials." (EXHIIBT 13)

33.     On June 24, 2012 Plaintiff submitted an second *Inmate Request* form stating that as she planned on representing herself in a restitution hearing she requested access to case law, judicial counsel forms, word processor and xeroxing. (EXHIBIT 14)  By that time Plaintiff's attorneys had removed themselves from her case and she had wanted to represent herself in a restitution hearing. Plaintiff needed to review the basis for restitution orders and provide a defense where the restitution was based on perjured testimony. She explained that the jail's legal research service only provided short summaries of case law.  Another response was received by Plaintiff on 6/24/2012 that stated, "We do not provide that material."

34.     As Plaintiff had missed the filing deadline for the petition for writ review, could not even obtain materials to file an application for default, and could not obtain materials to represent herself in a restitution hearing, on July 16, 2012 Plaintiff submitted an *Inmate Request* form requesting a booklet or manual of rights for jail inmates.  On July 17, 2012 Plaintiff received a reply that stated, "What you are asking for is a DOC publication and does not apply to county jail." (EXHIBIT 15)

35.     On September 6, 2012 after Plaintiff had been released, she filed an application for relief from judgment of disbarment.  (EXHIBIT 16) On September 10, 2012 Plaintiff received a letter from Frank McQuire, clerk of the Supreme Court.  His letter stated, "Returned unfiled are your documents received September 10, 2012.  The order on discipline filed in the above referenced matter is final." (EXHIBIT 17)

COMPLAINT

## V. EXHAUSTION OF LEGAL REMEDIES

36.     Plaintiff  used the prisoner grievance procedure  that was available at Las Colinas Detention Facility.  As noted above  on 3/14/2012 she  submitted an ***Inmate Request*** form (EXHIBIT 3) and asked to speak with a sergeant or administrator  because she believed her rights were violated due to the closing of the law library. The response was returned unsigned and  instead Plaintiff  was asked if  she wanted to schedule a counselor for library time.  This response was nonsensical as the law library had already closed  and the counselor so notified Plaintiff of same two weeks later.  No response was provided to Plaintiff's request to speak with a sergeant or administrator.  Plaintiff's request was simply ignored.

37.     On May 4, 2012 Plaintiff  filed an ***INMATE GRIEVANCE/APPEAL OF DISCIPLINE*** form  (EXHIBIT 6) regarding the lack of a law library and the fact that she did not receive a  response from the Legal Research service for over a month.  Counselor Montiel responded  to the grievance by stating that  she never received the request for the legal research service.   And Counselor Montiel made absolutely no response to Plaintiff's request for library facilities, nor did Counselor Montiel respond to Plaintiff's  claims  regarding  her  rights to access legal information.

38.     After being unable to obtain a response to her  claims of  rights violations from jail administrators, on July 16, 2012 Plaintiff  submitted an ***INMATE REQUEST*** form (EXHIBIT 15) asking for  a manual of inmates rights  so that she could determine exactly what procedures she should follow and was told  that  the requested  manual was  a DOC publication and does not apply to county jail.  Plaintiff's request for information on  inmate's rights was never provided.

# VI. LEGAL CLAIMS

39.   Plaintiff realleges and incorporates by reference paragraphs 1-38.

40.   **Defendants County of San Diego, Sheriff Gore and Counselor Montiel** in their official and individual capacities violated Plaintiff's constitutional right to access the courts by closing the Las Colinas law library without prior notice, belatedly replacing it with an unconstitutional legal research service, refusing to address her claims of rights violations, completely refusing to provide even the most basic of information regarding Plaintiff's rights as an inmate, while providing male inmates with access to legal information through an actual law library. Because of their deliberate indifference to Plaintiff's constitutional right to access the courts, the defendants caused Plaintiff to lose her right to appeal the underlying cause of her criminal conviction through a petition for writ of review of the State Bar ruling to the California Supreme Court. Plaintiff several times attempted to resolve the matter through the jail grievance system, but her requests to address the issues were simply ignored.

41.   Defendants County of San Diego, Sheriff Gore and Counselor Montiel in their official and individual capacities also violated California law by denying Plaintiff's access to the courts in a civil suit. When Plaintiff was threatened with an administratively sanctioned restitution order that was based upon perjured statements, trial counsel misconduct and trial court error, she had an opportunity to bring her issues before the Supreme Court of California. As this would be a deprivation of her property, Plaintiff's rights to due process and equal protection should have provided her with a meaningful opportunity to be heard. Plaintiff as a California prisoner seeking to defend herself in a civil suit, has a due process right of access to the courts unless there is a compelling state interest to justify the infringement. *Payne v.*

*Superior Court*, 553 P.2d 565 (1976)  This California Supreme Court case cited

*Shapiro* v. *Thompson* (1969)  394 U.S. 618, 634  which stated the denial of access to the court

constitutes a prima facie equal protection violation.

42.    **The County of San Diego** through its policy of  deliberate indifference to the rights

of female jail inmates causes it to be directly liable for a §1983 claim. The policy of the County

of San Diego to allow  male inmates access to the San Diego jail library while preventing access

to any library for female inmates is a violation of the due process clause of the Fourteenth

amendment.  The policy of the County of San Diego  also condoned a total nonresponsive

strategy to inmates' request s for legal access to the courts, access to a jail grievance system and

access to information regarding inmate's rights. It is well settled that the Due Process clause of

the 14th amendment provides that no person will be denied to present to the judiciary

allegations concerning violations of fundamental constitutional rights. *Wolff v. McDonnell*, 418

US 539 (1974).  Defendant  County of San Diego's actions violated Plaintiff 's  rights under the

Fourteenth Amendment to the United States Constitution, and caused Plaintiff  Gregory pain,

suffering, physical injury and emotional distress.

43.    The arbitrary acts of  Defendant County of San Diego in maintaining official policies

of closing only the women's law library without prior notice,  providing no  legal research

materials during the two month period  and  failing to effectuate  a viable grievance system

directly violates  the constitutional rights  of  Plaintiff and the female inmates of Las Colinas.

Because of these arbitrary acts, Plaintiff was not able to file a petition for writ of review with

the Supreme Court of California. The petition  was to address  the underlying basis for  the

criminal counts against her.  Plaintiff  had a non frivolous claim that directly involved her

17

COMPLAINT

conviction and she lost her ability to have her issues addressed through the appellate process because of the arbitrary acts of the County of San Diego. Considering the requirements of *Heck v Humphrey*, 512 US 477 (1994), it was impossible for Plaintiff to obtain a reversal because Plaintiff was blocked from the very court system that could have proven the amount of restitution ordered by the State Bar was unsupportable by the evidence. The amount of restitution was a significant factor in both the sentencing and restitution orders. Without an ability to pursue review of this order, it was impossible for Plaintiff to comply with *Heck.* However in a Ninth District case, *Nonnette v. Small* 16 F3d 872 (2002) the Court found the *Heck v Humphrey*, 512 US 477 (1994) requirement of a reversal prior to bringing forth a §1983 to be unnecessary where the party was out of custody. And as stated in *Spencer v. Kemna*, 523 US 1 (1998) a former prisoner no longer in custody may bring a §1983 claim without satisfying the favorable termination requirement.

44.     Based upon information and belief it was known by the County of San Diego and the San Diego County Sheriff's Department, that it was the custom and procedural policy of the County of San Diego and the San Diego County Sheriff's Department to continue operation of Las Colinas despite such an egregious denial of court access and that it was the custom and official procedural policy of the County of San Diego and the San Diego County Sheriff's Department to knowingly close only the law library in the women's female jail. It was also the custom and official procedural policy of the County of San Diego and the San Diego County Sheriff's Department to maintain a totally defective inmate grievance system. The County of San Diego is liable under Section 1983 because its policies were the moving force behind the violation against Plaintiff's constitutional rights. The County of San Diego made a deliberate choice to dismantle the women's law library, as the substituted legal research service

was contacted for by the San Diego County Sheriff's Department (EXHIBIT 4). In its place the County chose an totally inadequate and unconstitutional alternative of utilizing only a legal research service, all the while maintaining the male inmates' access to an actual law library. It was the custom and policy of the County of San Diego to furnish male inmates with adequate legal resources while failing to provide Plaintiff and other female inmates with comparative access.

45.     **Defendant William Gore** has been named as a party individually and in his official capacity as he acted under the color of state law. Defendant Gore dismantled the Las Colinas law library on or about March 6, 2012 without prior notice to the inmates of Las Colinas. Defendant Gore with callous indifference violated Plaintiff 's rights under the Fourteenth Amendment to the United States Constitution, and caused Plaintiff Gregory pain, suffering, physical injury and emotional distress. The type of legal research service that belatedly replaced the law library has been deemed an inadequate legal system by several courts. *Cannell v. Bradshaw*, 840 F. Supp. 1382, 1389 (1993); *Cepulonis v. Fair*, 732 F.2d 1,4 (1st cir. 1984); *Williams v. Leeke*, 584 F2d 1336, 1339 (4th cir. 1978). An official notice of the closing of the law library (EXHIBIT 4) indicated that it was the San Diego Sheriff's department that contracted for the inadequate legal research service. Defendant Gore also completely failed to maintain an adequate inmate grievance system within the jail itself thus denying Plaintiff even the ability to have the issue of no access addressed internally.

46.     Defendant Sheriff William D. Gore was acting according to the custom and procedural policies of Defendant, County of San Diego, and the San Diego County Sheriff's Department, and the laws empowering him as a San Diego County employee, in causing the Plaintiff's

COMPLAINT

constitutional violations.  Sheriff  Gore  completely shut down the Las Colinas law library on or

about March 6, 2012  without notice,  with no other alternative  in place,  thus 'excessively

restricting'  Plaintiff's ability to access the courts, by exceeding the limits described by *Lewis*

*v. Casey*, 518 U.S. 343, 355 (1996) wherein a violation would occur when  a prisoner was

"...stymied by the inadequacies of  the law library."  In Las Colinas the law library  was closed

with no available alternative  provided to Plaintiff for over two months.  And during that same

time period Plaintiff missed the deadline for filing an appeal.  Defendant  Sheriff  William D.

Gore dismantled the Las Colinas  law library  without  sufficient cause related to a legitimate

penological interest pursuant to the holding in *Lavender v. Lampert*  242 F. Supp 2d 821 (D. Or.

2002).   With deliberate indifference to Plaintiff's constitutional right to access the courts, and

with an awareness of the high probability of harm to Plaintiff who could not file a timely

appeal when the Las Colinas library was shut down,  Sheriff Gore consciously and knowingly

chose to disregard the risk of harm because each of the men's jails in San Diego County

continued  to allow male inmates access to the Courts, an access completely denied to Plaintiff.

While  Sheriff Gore is afforded  broad discretion  in exercising  management of the Las Colinas

Jail, Defendant Gore implemented a policy so deficient that the policy "itself is a repudiation of

constitutional rights. "  Defendant Gore knew or  reasonably should have known the complete

elimination of a law library at only the women's jail under his administration 'repudiated'

Plaintiff 's constitutional right to access the courts.  It was Sheriff Gore's implementation of a

policy that  was a moving force in the violation of Plaintiff Gregory's constitutional  rights.

*Hansen v. Black* 885 F.2d  642, 646 (1989).  It is Sheriff Gore's deliberate indifference to the

risks  resulting from the  unconstitutional and inequitable  closing  of  only the female jail law

library that enables him to be a valid party in this case.  The belated

attempt to use a "legal research service" nearly a month after the law library was closed, that was not functioning for at least a month after its inception is proof of a callous disregard for the constitutional rights of Plaintiff, especially when male inmates had access to an actual law library. Sheriff Gore's choice of a legal research service (known as an 'exact-cite' or 'paging' system) has been found to be constitutionally inadequate. " By 1993, no reasonable public official would have believed a paging system was by itself sufficient to protect an inmate's fundamental constitutional right of access to the courts " *Cannell v. Bradshaw*, 840 F. Supp. 1382, 1389 (1993). Defendant Gore, in charge of the women's jail, and responsible for all San Diego inmates, chose a method to access the courts for the women that has been ruled unconstitutional. Defendant Gore, in charge of seven detention facilities knew or should have known that such a deficient access to the courts for only the women would constitute a harmful result for the women inmates and in fact Plaintiff was substantially injured as described within this complaint.

47.    **Defendant Counselor Montiel** was Plaintiff's counselor at the Las Colinas Detention facility. As a county employee, counseling female jail inmates, Counselor Montiel knew or should have known that the closing of a law library posed a harm to Plaintiff when she was prevented from accessing needed research information. In addition, Plaintiff directly notified Counselor Montiel of the constitutional violations and Counselor Montiel failed to respond to Plaintiff's notice of the violations. Plaintiff's right to access the courts was denied when Counselor Montiel, acting under color of law as an employee of the County of San Diego, serving under Sheriff Gore, violated Plaintiff's constitutional right of court access by repeatedly ignoring her requests for access to research materials, by failing to provide Plaintiff timely notice of the closing of the law library, by refusing to refer Plaintiff's complaints to an

administrative official as requested, and by refusing to respond to an official grievance. Counselor Montiel exercised power and authority over inmate Plaintiff due to the nature of her employment in the jail.

48.     Defendant Counselor Montiel has been named as a party individually and in her official capacity as she acted under the color of state law. Counselor Montiel, as an employee of the County of San Diego, carrying out the policies and procedures of the County of San Diego and serving under the management of Sheriff Gore, violated Plaintiff's constitutional right of court access by her knowing and deliberate indifference to Plaintiff's repeated requests for assistance. It was Counselor Montiel who personally refused to answer Plaintiff's request for research materials. It was more than mere negligence when Counselor Montiel refused to forward Plaintiff's claim of rights violations to a sergeant or administrator as requested by Plaintiff. It was more than mere negligence when Counselor Montiel refused to respond to Plaintiff 's second request to address her rights as an inmate.   Counselor Montiel, knew or should have known that these arbitrary acts of indifference violated Plaintiff's constitutional right to access the courts. In addition to violating Plaintiff's due process rights to access the courts under the fourteenth amendment, Counselor Montiel also violated Plaintiff's First Amendment rights to file a grievance with prison officials. "There is a First Amendment right to petition the government through prison grievance procedures. See *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009); Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005).  Counselor Montiel not only denied Plaintiff access to needed legal research materials, Counselor Montiel deliberately ignored Plaintiff's repeated requests to access the inmate grievance system.

49.     Counselor Montiel is not entitled to qualified immunity as her acts were made with a deliberate indifference to the known constitutional rights of Plaintiff to access the courts as well as her rights to access a jail grievance system.  Counselor Montiel was petitioned numerous

times for relief, yet each and every time Counselor Montiel either denied or simply ignored Plaintiff's requests.

50.    In *Griffin v. Coughlin,* 743 F. Supp. 1006 the court stated, "when a meaningful access issue is properly before the court, the prison authorities "bear the burden of demonstrating the adequacy of the means they chose" then provided numerous examples of supporting cases :

> Campbell v. Miller, 787 F.2d 217, 226 (7th Cir.), cert. denied, 479 U.S. 1019, 107 S.Ct. 673, 93 L.Ed.2d 724 (1986); accord DeMallory, 855 F.2d at 448; Buise v. Hudkins, 584 F.2d 223, 228 (7th Cir. 1978),cert. denied, 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979); Sostre v. McGinnis, 442 F.2d 178, 201 (2d Cir.1971) (en banc), cert. denied, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 & 405 U.S. 978, 92 S.Ct. 1190, 31 L.Ed.2d 254 (1972). Prison officials may meet their meaningful access responsibilities by either of two means. They "must provide inmates with access to an adequate law library or, in the alternative, with adequate assistance from persons trained in the law." Lindquist v. Idaho State Bd. of Corrections, 776 F.2d 851 (9th Cir.1985) (emphasis in original)."

51.    When the defendants made the decision to close the Las Colinas law library without notice, and replace it with a constitutionally deficient system,  they made the deliberate and callous decision to risk the consequences.  Male inmates in San Diego have an actual law library in downtown San Diego, and male inmates in other jails may have an opportunity to access research materials, an access that was denied to the female inmates of Las Colinas.

52.    The leading cases on this issue, *Bounds* and *Lewis,* were heard over 36 and 17 years ago respectively.  Technological advances have negated the expensive necessity of maintaining countless Federal and State Code books in a physical law library. The internet  now allows unlimited access to codes, cases, treatises and forms at practically no cost. Free websites such as Google Scholar offer case searches for free. Fillable Judicial council forms are all on line and there are at least two free "Jail House Lawyer" sites written by two prominent law schools that could easily assist an inmate for no cost at all.

53.     A large number of cases relating to an unconstitutional lack of access deal with prisoners who have had restricted access because of disciplinary issues. In this case Plaintiff was a inmate trustee.  She worked five days a week,  lived in separate housing from the general population and had no disciplinary problems at all. As a result she was allowed to walk to the various administration buildings unaccompanied, for  medical treatment, dental treatment and to attend classes. There  was  no  security risk. One computer with restricted internet access could have provided  all of the requested research materials  at relatively  no expense.  There is simply no reason for the defendants, except for their callous indifference to the constitutional rights of the inmates, to have ignored the repeated requests for research materials and tools.  Technological advances since the leading law library cases (*Bounds* and *Lewis*) have negated the necessity of physical law libraries and as a result there is simply no viable excuse to deny prisoners the right to access needed  research  materials. The  United  States  Supreme  Court  has  repeatedly validated a prisoner's right to access the courts for a non frivolous confinement related issue. Yet this right has been markedly undermined by the Defendants due to their adherence to a policy that effectively eliminated the women inmates' ability to access the court system.  Defendants' disregard for the consequences of  their deficient policies makes a mockery of prisoners' rights. The U.S. Supreme Court  has repeatedly ruled that prisoners  have a constitutional right to access the courts yet the Defendants' policies failed to provide even the most elementary access. The result is that the County of San Diego is effectively thumbing its nose at existing case law and utilizing procedures that do not even come close to actual compliance.

COMPLAINT

54.     In 1977 the U.S. Supreme Court in *Bounds* determined that a prisoner's access to the Courts is a right guaranteed by the Constitution of the Unites States.   Nineteen years later in *Lewis,*  the U.S. Supreme Court clarified that constitutional right by limiting it to prisoners who incurred an actual injury because of a violation by prison authorities. It is reasonable to believe that Defendants County of San Diego, Sheriff Gore and Counselor Montiel knew or should have known, as a result of these cases, as policy makers and managers of seven detention facilities in San Diego County, that preventing adequate access to the courts would harm prisoners in their care.  Defendant County of San Diego in determining official inmate policy and procedures, knew or  should have known that restricting a female inmate's access to the courts violated the constitutional rights of the inmates.  Defendant Sheriff Gore as the manager of seven detention facilities knew or should have known that closing the women's jail law library and contracting for a constitutionally defective alternative would effectively block the female inmate's access to the courts. Counselor Montiel as an employee of the jail system, knew or should  have her known her arbitrary action in denying Plaintiff's access to administrators  to address her rights, denying her access of materials needed to access the courts and finally denying Plaintiff information on  the rights she had to address these injuries, would harm the Plaintiff. All of these defendants deliberately and with callous indifference to existing law, denied Plaintiff's access to the court and denied her rights to a jail grievance system. The right of access to courts also applies to prison grievance proceedings. See *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995), abrogated in part on other grounds by *Shaw v. Murphy*, 532 U.S. 223 (2001).

55.     It is well settled that a person should be compensated fairly for the injuries caused  by

COMPLAINT

the violation of their rights. *Fulford v. Klein*, 529 F. 2d 377, 381 (1976)  And reckless or

callous indifference to constitutionally protected rights of others is a basis for punitive

damages. *Smith v. Wade*, 461 US 30 - Supreme Court 1983.   The absolute unsympathetic

disregard for Plaintiff's repeated request for access to the courts, the complete lack of response

to her repeated requests to address constitutional violations, and the absolute refusal to

provide Plaintiff with information on inmates rights, support Plaintiff's request for damages.

Plaintiff is requesting $250,000 from each defendant as it represents the  damages inflicted

upon Plaintiff due to her incarceration and loss of earnings. Despite spending eight years

assisting clients with limited means to address their legal issues, Plaintiff now finds herself

disbarred, incarcerated and burdened with reimbursing former clients for monies that were

properly earned and for which the former clients have already received the benefits.   Plaintiff

is also obligated to the State Bar for expenses of a trial that contained reversible error and

prosecutorial misconduct.  Because of the misconduct of the Defendants  Plaintiff was never

able to address the draconian results of the State Bar ruling. Punitive damages are also

warranted  due to the "reckless" and "callous indifference " of the defendants in ignoring

Plaintiff's repeated requests for access to the court and to the jail grievance system that

Plaintiff needed to address the underlying ruling of her conviction.

56.      Once Plaintiff was denied access to petition the Supreme Court of California for

review of the State Bar's ruling, she was permanently disbarred.  The issue of outstanding

unpaid legal fees was *not* adjudicated in the State Bar's ruling.  As the State Bar focused

solely on the method of withdrawal of funds, there was a factual  basis to support grounds for a

petition.  However once the State Bar's ruling became final, that ruling acted as *res judicata* as

to the subsequent amount of criminal restitution ordered and  supported the length of the

COMPLAINT

criminal sentencing.  Plaintiff never had the opportunity to petition the Supreme Court for a review of this administrative ruling as she is entitled.  Plaintiff had a constitutional right to access the courts in order to properly address this crippling ruling, a right that was cruelly denied by the arbitrary acts of Defendants.  Not surprisingly the Defendants also failed to provide credible access to an inmate grievance system that could have provided Plaintiff with an opportunity to address her concerns within the confines of Las Colinas without the necessity of this lawsuit.

## VII. PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully pray that this court enter judgment:

57.     Granting Patricia A. Gregory a declaration that the acts and omissions described herein violate her rights under the Constitution and laws of the United States, and

58.     Granting Plaintiff compensatory damages in the amount of $250,000 against each defendant, jointly and severally.

59.     Plaintiff seeks punitive damages in the amount of $250,000 against each defendant, jointly and severally.

60.     Plaintiff also seek a jury trial on all issues triable by jury,

61.     Plaintiff also seek recovery of her costs in this suit,

62.     Any additional relief this court deems just, proper, and equitable.

Date: April 14, 2013                                         Respectfully submitted,

PATRICIA A. GREGORY

27

COMPLAINT

**VERIFICATION**

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I declare
under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at Apple Valley, California on April 14, 2013

Patricia A. Gregory

28

COMPLAINT